UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AIX SPECIALTY INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KIM'S NEW STAR LLC dba TWIN OAKS SENIOR LIVING, a Utah limited liability company; JOONG J. KIM, an individual doing business as Twin Oaks Assisted Living and Memory Care also known as Twin Oaks Senior Living, a Utah Limited Liability Company; MATTHEW CIELO, an individual; BANYAN CONSULTING GROUP LLC, a Utah business entity; STEPHEN CLARK, an individual; MINDY Hall, an individual; THE ESTATE OF THAES WEBB JR., by and through THAES WEBB III and KATHRYN BAIER, personal representatives; THAES WEBB III, an individual; AMY RICH personal representative for DELEENE WEBB, an individual; TERRILEE JACKSON, an individual and PATTY ROGERS, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [58] AND [63] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:25-cv-00672-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants The Estate of Thaes Webb Jr., by and through Thaes Webb III and Kathryn Baier, personal representatives; Thaes Webb III; Kathryn Baier; Amy Rich, personal representative for Deleene Webb; Terrilee Jackson; and Patty Rogers'

1

(collectively, the "Webb Defendants") Rule 12(b)(1) Motion to Dismiss[1] Plaintiff's Complaint.[2] The Motion is joined by Defendants Kim's New Star LLC dba Twin Oaks Senior Living, Joong J. Kim, Matthew Cielo, Banyan Consulting Group LLC, Stephen Clark, and Mindy Hall (collectively, the "Insured Defendants").[3]

## BACKGROUND

This case arises out of Plaintiff AIX Specialty Insurance Company's ("AIX") request for declaratory relief.

**Plaintiff's Allegations**

In its Second Amended Complaint, AIX alleges the following. Defendant Kim's New Star LLC dba Twin Oaks Senior Living ("Twin Oaks") provides "nursing and residential care to senior citizens or those otherwise unable to care for themselves."[4] AIX provided liability insurance to the Insured Defendants under two policies, a primary policy and an excess policy.[5] The policies exclude coverage for, among other things, bodily injury arising out of the ownership or use, including operation and "loading and unloading," of any auto owned by the insureds.[6] In May 2025, the Webb Defendants filed an amended complaint against the Insured Defendants in Utah state court (the "Underlying Action").[7] In the Underlying Action, the Webb Defendants alleged that the Insured Defendants generally failed to provide adequate care and treatment to

---

[1] Motion to Dismiss ("MTD"), ECF No. 58, filed Jan. 5, 2026.
[2] Second Amended Compl., ECF No. 15, filed Nov. 25, 2025.
[3] Notice of Joinder in Webb Defendants' Motion to Dismiss, ECF No. 63, filed Jan. 30, 2026.
[4] Second Amended Compl. ¶ 8.
[5] *Id.* ¶ 25.
[6] *Id.* ¶¶ 63, 66.
[7] *Id.* ¶ 28.

Thaes Webb Jr. and Deleene Webb and failed to secure Mr. Webb's wheelchair in the back of a Twin Oaks vehicle, causing it to tip over and fatally injure him.[8]

AIX denied coverage for the wrongful death claim and other claims related to the vehicle but agreed that coverage was potentially available for other professional negligence claims unrelated to the automobile incident.[9] It provided a defense for each Insured defendant in the Underlying Action under a reservation of rights.[10] Despite AIX's coverage determinations, the Insured Defendants repeatedly demanded that AIX settle and pay damages for all the claims in the Underlying Suit.[11] AIX again explained its position that no coverage or indemnification was available for claims arising from the automobile incident.[12]

**Consent Judgment**

In August 2025, the Webb Defendants and the Insured Defendants entered into a Settlement Agreement.[13] In a Consent Judgment, the Utah court entered judgment in favor of the Webb Defendants against Twin Oaks in the amount of $4,000,000 according to the terms of the Settlement Agreement.[14] Of that amount, $1,026,500 has already been satisfied, primarily by other insurance providers, leaving an outstanding balance of $2,973,500.[15]

AIX alleges that the Settlement Agreement was entered into without its participation or consent and that the Agreement and Consent Judgment do not apportion damages among the

---

[8] *Id.* ¶ 29; *see also* Underlying Compl., ECF No. 15-2, filed Nov. 25, 2025.
[9] Second Amended Compl. ¶¶ 102–04.
[10] *Id.* ¶ 114.
[11] *Id.* ¶ 106.
[12] *Id.* ¶ 107.
[13] *Id.* ¶ 2; *see also* Settlement Agreement, ECF No. 15-5, filed Nov. 25, 2025.
[14] Second Amended Compl. ¶ 2; *see also* Consent Judgment, ECF No. 15-3, filed Nov. 25, 2025.
[15] Second Amended Compl. ¶ 2.

3

various claims alleged in the Underlying Action.[16] In the Settlement Agreement, the Webb Defendants agreed that they would not enforce or collect any part of the judgment against the Insured Defendants or any of their affiliates other than AIX.[17] The Agreement also assigns and transfers all of the Insured Defendants' rights against AIX arising under the insurance policies to the Webb Defendants.[18]

In its Second Amended Complaint, AIX seeks declaratory judgment that it has no duty to defend or indemnify any of the defendants or, alternatively, that it has no duty to indemnify the defendants for any claim arising out of the automobile incident.[19] It also asks the court to declare that the Consent Judgment is not binding on AIX, that no "excess judgment" exists in this matter, that any indemnity obligation is limited to damages, that AIX has no duty to defend or provide indemnification for any auto-based claims in the Underlying Action, that any indemnity is limited to covered professional-services damages, and that AIX has no duty to negotiate or attempt to settle uncovered claims.[20]

## STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows courts to dismiss claims for "lack of subject-matter jurisdiction."[21] "A Rule 12(b)(1) motion to dismiss 'must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.'"[22] "[T]he party invoking the federal court's jurisdiction bears the burden of

---

[16] Id. ¶ 3.
[17] Settlement Agreement § 2.
[18] Id. § 5.
[19] Second Amended Compl. ¶¶ 125–26.
[20] Id. ¶¶ 128–41.
[21] Fed. R. Civ. P. 12(b)(1).
[22] Chipotle Mexican Grill, Inc. v. Chevedden, No. 14-CV-0018-WJM-KMT, 2014 WL 1004529, at *1 (D. Colo. Mar. 14, 2014) (quoting Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971)).

proof."[23] A court lacking subject-matter jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[24]

## DISCUSSION

Defendants argue that AIX's request for declaratory judgment is barred by the *Rooker-Feldman* Doctrine because it constitutes a de facto appeal of a state court judgment.[25] Alternatively, Defendants contend that the court should decline to exercise jurisdiction over AIX's claims under the Declaratory Judgment Act.[26]

## I.    *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'"[27] The Supreme Court has clarified the "narrow scope" of the doctrine, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[28] Thus, the doctrine "generally does not bar a suit by a federal-court plaintiff who was not a party in the state court litigation, nor does it bar a claim that does not seek to modify or set aside a state court judgment."[29]

---

[23] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
[24] *Id.*
[25] MTD 4.
[26] *Id.* at 5–6.
[27] *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Mo's Express, LLC v. Sopkin,* 441 F.3d 1229, 1233 (10th Cir. 2006)).
[28] *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)).
[29] *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023).

Tenth Circuit *Rooker-Feldman* jurisprudence "emphasize[s] the relief sought by federal-court plaintiffs"[30] by "asking whether the state-court judgment *caused,* actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*."[31] A plaintiff's claims are not barred by the doctrine if the federal action "would not reverse or otherwise 'undo' the relief granted by the [state court]."[32] Accordingly, the Tenth Circuit has identified four factors that must exist to remove subject-matter jurisdiction under the *Rooker-Feldman* doctrine: "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment."[33]

Defendants argue that AIX is asking the court to "retroactively allocate damages between covered and non-covered claims," which they characterize as "a de facto appeal of the state court judgment."[34] Plaintiff responds that the *Rooker-Feldman* doctrine cannot apply because AIX was not a party in the underlying action and is not bound by the Consent Judgment.[35] Plaintiff also argues that it is not challenging the validity of the state court judgment and that the court can declare that AIX owes no contractual obligations to indemnify Defendants without altering or undermining the Consent Judgment.[36] Defendants reply that AIX is in contractual privity with

---

[30] *PJ ex rel. Jensen*, 603 F.3d at 1193.

[31] *Mo's Express*, 441 F.3d at 1237 (quoting *Kenmen Eng'g v. City of Union,* 314 F.3d 468, 476 (10th Cir. 2002)) (emphasis in original).

[32] *PJ ex rel. Jensen*, 603 F.3d at 1193 (quoting *Mo's Express*, 441 F.3d at 1237) (alterations in original).

[33] *Bruce*, 57 F.4th at 746.

[34] MTD 3.

[35] Opposition to Motion to Dismiss ("Opp'n") 6, ECF No. 62, filed Jan. 27, 2026.

[36] *Id.* at 8–9.

6

the Insured Defendants, rendering it a "state-court loser by proxy,"[37] and that its requested relief would alter the judgment's practical impact.[38]

### A.    Loss in State Court

Regarding the parties' first dispute, the record shows that AIX was not a party in the underlying action. It was not named as a defendant in the Underlying Complaint,[39] and the Consent Judgment does not list it as a defendant or enter judgment against it.[40] Furthermore, AIX did not sign the Settlement Agreement, and the Agreement imposes no obligations on AIX.[41] Plaintiff only participated in the Underlying action by providing a defense for the Insured Defendants under a reservation of rights.[42] In Utah, an insured's tender of defense "allows the insurer to appear and defend the insured," but it "does not change the real party in interest."[43] An insured who triggers its insurer's duty to defend is still the real party in interest.[44]

Defendants' privity arguments do not change this conclusion. The Reply states that the *Rooker-Feldman* doctrine "bar[s] claims by non-parties in privity with the state-court loser."[45] But the case that Defendants rely on for this principle, *Kenmen Engineering v. City of Union*, was overruled on these same grounds by the United States Supreme Court.[46] The Supreme Court in *Lance v. Dennis* rejected the same type of privity arguments that Defendants now offer and

---

[37] Reply in Support of Motion to Dismiss ("Reply") 5, ECF No. 65, filed Feb. 3, 2026.
[38] *Id.* at 8.
[39] *See* Underlying Compl.
[40] Consent Judgment 3–4.
[41] *See generally* Settlement Agreement.
[42] Second Amended Compl. ¶ 114.
[43] *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, ¶ 37, 332 P.3d 908, 920.
[44] *Id.* at 921.
[45] Reply 4.
[46] *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 480 (10th Cir. 2002) *overruled in part* by *Lance v. Dennis*, 546 U.S. 459, 466, (2006); *see also Tal v. Hogan,* 453 F.3d 1244, 1256 n.10 (10th Cir. 2006) (recognizing the Supreme Court's overruling of *Kenmen's* application of the *Rooker-Feldman* doctrine).

explained that "[t]he *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."[47]

The other cases discussed by Defendants in this context likewise fail to provide any basis for their privity arguments.[48] In *Bruce v. City & County of Denver*, the Tenth Circuit recognized that the *Rooker-Feldman* doctrine does not apply "to non-parties who were in privity with a party."[49] Instead, the court held that the doctrine's application depends on "whether a federal claimant seeks to appeal a state court judgment that the claimant could have appealed in state court," even if the claimant was not listed as a party on the state court docket.[50]

Even assuming that AIX was in privity with the Insured Defendants, that is not enough for the *Rooker-Feldman* doctrine to apply. Defendants must show that AIX was a party in the underlying case or that it could have appealed the state court judgment in state court.[51] As previously stated, AIX has demonstrated that it was not a party in the Underlying Action. And Defendants have provided no authority to show that AIX would have standing as a non-party insurer to appeal the Settlement Agreement and Consent Judgment against the wishes of its insureds.[52] Instead, Defendants' position seems to be that because *they* mutually agreed at the

---

[47] *Lance v. Dennis*, 546 U.S. 459, 466 (2006).

[48] Defendants also cite to *Erlandson v. Northglenn Municipal Court* as an example of the Tenth Circuit applying *Rooker-Feldman* to bar a non-party's claims. Reply 4. However, the federal plaintiff in *Erlandson* appears to have been a party to the municipal court proceeding he was challenging in federal court, *Erlandson v. Northglenn Municipal Court*, 528 F.3d 785, 786 (10th Cir. 2008), so it is unclear how the case applies here.

[49] *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 747 (10th Cir. 2023) (citing *Lance*, 546 U.S. at 465).

[50] *Id.* at 747–48.

[51] *See id.*

[52] *See Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 9, 293 P.3d 241, 244 ("We have previously held that persons or entities that are not parties to a proceeding are not entitled to an appeal as of right.").

conclusion of a state court case that non-party AIX should be responsible for certain amounts, no federal court can address the issue. The *Rooker-Feldman* doctrine does not bar federal jurisdiction in this case.

### B.    Relief Sought

Even if AIX were a party in the Underlying Action, the fourth *Rooker-Feldman* prerequisite also is not satisfied in this case.[53] AIX's claims for declaratory judgment would not reverse or undo the state-court Consent Judgment. Contrary to Defendant's arguments, Plaintiff's alleged harms do not "flow[] directly from the Consent Judgment in the Underlying Action.[54] The Consent Judgment entered a $4,000,000 judgment in favor of the Webb Defendants against Twin Oaks pursuant to their Settlement Agreement.[55] In other words, it resolved the issue of the Insured Defendants' liability and damages owed to the Webb Defendants.

The Consent Judgment did not resolve or even address the issue of AIX's contractual duty to indemnify the Insured Defendants under the insurance policies. In Utah, an insurer's duty to defend and its duty to indemnify are "two distinct duties, with 'an insurer's duty to defend [being] broader than its duty to indemnify.'"[56] Thus, AIX's defense under a reservation of rights in the Underlying Action does not mean that it has a duty to indemnify the Insured Defendants. AIX now seeks to resolve the indemnification question. The Consent Judgment against Twin Oaks has no bearing on whether the injuries alleged in the Underlying Action fall within the coverage of the AIX insurance policies.

---

[53] *Bruce*, 57 F.4th 738 at 746.
[54] *See* Reply 6.
[55] Consent Judgment.
[56] *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp*., 2014 UT 28, ¶ 36, 332 P.3d 908, 920 (quoting *Sharon Steel Corp. v. Aetna Cas. & Sur. Co*., 931 P.2d 127, 133 (Utah 1997)).

Similarly, a determination that AIX does or does not have a duty to indemnify the Insured Defendants or that the Consent Judgment does not create any indemnity obligations for AIX would not "reverse or otherwise undo" the state-court Consent Judgment.[57] A finding that AIX has no duty to indemnify Twin Oaks and the Insured defendants would not change the fact that judgment was entered against the Insured Defendants, nor would it change the damages that were awarded. It would, at most, reduce the value of the claims against AIX that were assigned to the Webb Defendants in the Settlement Agreement.[58] As noted earlier, there has been no argument that AIX was party to the Settlement Agreement. And a finding that the Consent Judgment does not create any payment obligations for AIX would not undermine the state-court ruling because the Consent Judgment does not even attempt to impose or address any obligations related to AIX.[59]

In sum, AIX's request for declaratory relief asks the court to resolve the question of its contractual duty to indemnify the Insured Defendants, an entirely different issue than any resolved or addressed in the Underlying Action.[60] Therefore, the court will not need to review the propriety of the Consent Judgment, and any relief granted in this case will have no effect on the state-court judgment in the Underlying Action. The *Rooker-Feldman* doctrine does not bar federal jurisdiction here.

---

[57] *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010).
[58] Settlement Agreement § 5.
[59] Consent Judgment.
[60] *See generally* Second Amended Compl.

10

## II.      Declaratory Judgment Act

"The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party' *not* that it must do so."[61] This grants federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants."[62] The Tenth Circuit has provided certain factors that courts may weigh when determining whether to hear a declaratory judgment action, including:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[63]

Defendants argue these *Mhoon* factors all weigh against the court hearing AIX's request for declaratory judgment in this case.[64]

### A.      Settle the Controversy

The first factor asks "whether a declaratory action would settle the controversy."[65] AIX contends that it would because the sole dispute here relates to the scope and applicability of the insurance policies to the facts and judgment of the Underlying Action.[66] Defendants respond that any federal ruling on the issue would not fully settle the controversy because it would risk

---

[61] *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1329 n.6 (10th Cir. 2022) (quoting 28 U.S.C. § 2201(a)) (emphasis in original).

[62] *Francis Trucking, Inc. v. Francis*, No. 1:22-CV-00088-TC-JCB, 2023 WL 1472136, at *8 (D. Utah Feb. 2, 2023) (quoting *Atlas Biologicals*, 50 F.4th at 1329 n.6).

[63] *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

[64] MTD 6; Reply 9–10.

[65] *Mhoon*, 31 F.3d at 983.

[66] Opp'n 13.

inconsistent rulings with state-court proceedings regarding the judgment's enforceability and reasonableness.[67]

The court agrees that the first factor weighs in favor of hearing the declaratory action. As already discussed, Plaintiff's Second Amended Complaint asks the court to resolve a completely separate issue from that decided in state court. The question now before the court relates to AIX's contractual obligations to the Insured Defendants, not the Insured Defendants' tort liability to the Webb Defendants.[68] Resolving this question would settle the entire controversy about AIX's liability to the Defendants and would clarify the scope of the parties' contractual relationship. Despite Defendants' concerns, there is also no risk of any rulings inconsistent with state enforcement proceedings because the Consent Judgment only establishes liability and damages between the Webb Defendants and the Insured Defendants.[69] The legal relationship and liabilities between the Insured Defendants and AIX is a separate question, the resolution of which will not impact or contradict the state-court judgment.

### B.    Useful Purpose

The second factor asks whether a declaratory action "would serve a useful purpose in clarifying the legal relations at issue."[70] For the same reasons discussed above regarding the first factor, the court concludes that this factor also weighs in favor of hearing the declaratory action.[71] Of course, this does not mean that the numerous declarations AIX seeks are all needed,

---

[67] Reply 9.

[68] *See* Second Amended Complaint; *but see* Underlying Complaint.

[69] *See* Consent Judgment.

[70] *Mhoon*, 31 F.3d at 983.

[71] *See Acuity v. McGinnis Homes, LLC,* 194 F. Supp. 3d 1204, 1210 (D. Utah 2016) (finding that the first and second *Mhoon* factors weighed in favor of hearing an insurer's declaratory judgment action when (1) the insurer was not a party to the underlying lawsuit, (2) the underlying lawsuit did not involve the insurer or any insurance coverage issues, and (3) the state court action would not resolve the issues presented in the declaratory judgment action).

useful, or will be heard. But it is clear that answering one or more declarations sought would clarify the legal relations at issue.

### C.    "Procedural Fencing"

The third factor instructs the court to consider "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata.* '"[72] Defendants argue that "the reasonableness of [a consent] judgment is typically litigated in state court enforcement proceedings" and accuse AIX of "engaging in procedural fencing to avoid the state court's scrutiny of its failure to settle or defend."[73] The court again reiterates that the reasonableness of the consent judgment is not before it. Even if AIX were ultimately found to have no contractual obligation to pay any portion of the Consent Judgment to the Insured Defendants or their assignees, the Consent Judgment would remain enforceable and valid between the parties to the Settlement Agreement.

Defendants have not provided any support for their claim that AIX's "defense and settlement conduct" would be scrutinized in a state-court proceeding where it was not a party and where its contractual obligations were never raised.[74] But if that were a prospect, Defendants have not shown that there is an already filed state court case on these issues. Thus, it does not seem to be "procedural fencing" for Plaintiff to file its suit in federal rather than state court. This factor generally weighs in favor of hearing the declaratory action.

---

[72] *Mhoon*, 31 F.3d at 983.
[73] MTD 6.
[74] *See* Reply 10.

### D.       Friction Between State and Federal Courts

The fourth factor asks "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."[75] Defendants argue that this factor "weighs heavily in favor of dismissal" because it would create unnecessary friction "[f]or a federal court to declare a state judgment 'unenforceable.'"[76] But such is not the case here. The Consent Judgment does not enter judgment against AIX, find AIX liable for any wrongdoing, or order AIX to pay any damages to any party.[77] The Settlement Agreement incorporated by the Consent Judgment likewise imposes no obligations on AIX.[78]

Any duties or obligations that AIX has to indemnify the Insured Defendants arise out of the insurance policies, not the Consent Judgment. "Federal courts can issue declaratory judgment on the scope of insurance coverage, even if the federal declaratory judgment action concerns some of the same factual questions as the state court action about which coverage is disputed."[79] Therefore, a finding that AIX has no duty to indemnify the Insured Defendants for damages under the judgment would not declare any part of the Consent Judgment "unenforceable" and would not create friction with the state-court ruling. This factor also weighs in favor of hearing the declaratory action.

---

[75] *Mhoon*, 31 F.3d at 983.
[76] MTD 6.
[77] Consent Judgment.
[78] *See* Settlement Agreement.
[79] *Cont'l Cas. Co. v. Bowen*, No. 2:09-CV-00810-TC, 2010 WL 3743909, at *1 (D. Utah Sept. 22, 2010) (citing *Mhoon*, 31 F.3d at 983).

### E.    Alternative Remedy

Finally, the fifth factor asks "whether there is an alternative remedy which is better or more effective."[80] Defendants contend that state enforcement proceedings or a state-court action for declaratory judgment would be superior alternatives.[81] AIX argues that the Underlying Action has already concluded with the resolution of the tort claims between the Webb Defendants and the Insured Defendants and that no pending state-court proceeding would resolve the current insurance coverage dispute.[82]

Other courts in this district have permitted declaratory actions regarding the scope of liability insurance coverage even as an underlying lawsuit about the insured's liability to an underlying plaintiff proceeds.[83] Here, Defendants have presented no argument or evidence showing that any state court proceedings involving the question at issue here—whether AIX has a contractual duty to indemnify the Insured Defendants for the damages imposed in the Underlying Action—are pending or imminent. In the absence of any alternative state proceedings, it is not inappropriate for AIX to seek this relief in federal court. Because none of the *Mhoon* factors weigh in favor of abstention in this case, the court will not dismiss Plaintiff's claims under the Declaratory Judgment Act.

### ORDER

Defendants' [58] and [63] Motions to Dismiss are DENIED.

---

[80] *Mhoon*, 31 F.3d at 983.
[81] MTD 6.
[82] Opp'n 12, 14.
[83] *Farm Bureau Prop. & Cas. Ins. Co. v. Sparks*, No. 120-CV-00044-JNP-JCB, 2021 WL 321951, at *4 (D. Utah Jan. 29, 2021).

15

Signed April 16, 2026.

BY THE COURT

_____

David Barlow
United States District Judge